ADAM C. KIDD, Appellant, *v.* SAMUEL K. McGINNIS, Respondent.

## 1. Contract; Public Park, Refusal of City to Accept.

K. and M, were the owners in severalty of certain lands within the corporate limits of the city of J. They entered into a contract with trustees, by which they agreed to furnish a fund which the trustees agreed to expend in improving certain land of M. for a city park and to have the improvements completed by January 1, 1885; K. and M. agreeing that upon the completion of the improvements, or at any time prior to January 1, 1886, when the city of J. would accept the same, they would dedicate certain land, including the land on which the improvements were made, to the city for a public park forever, on certain conditions. The city, by resolution, agreed to accept the land when improved as stated in the contract. The funds were raised, improvements made, and deeds of dedication placed in the hands of the trustees. The city refused to accept. After January 1, 1886, M. withdrew his deed, and conveyed to a third party. *Held*, that he violated no contractual relations with K. in so doing.

## 2. Specific Performance — Continuing Covenants.

Courts of equity will not decree specific performance of contracts containing continuous covenants, the enforcement of which might require the constant supervision of a court; nor will they enforce specific performance of contracts, every alleged violation of which would require the consideration and determination of questions of fact.

(Opinion Filed January 13, 1891.)

*A*PPEAL from district court, Stutsman county; Hon. RODERICK ROSE, Judge.

Fredrus Baldwin and Paul & Merwin, for appellant, argued that the contract between the trustees and the parties to this action, together with the first resolution of the city council, constituted a dedication of land for public purposes: Dillon Mun. Cor. 764; Abbott v. Mills, 3 Vt. 526; Princeville v. Auten, 77 Ill. 325; Wheeler v. Bedford, 54 Conn. 244; Price v. Plainfield, 40 N. J. L. 608; Maywood Co. v. Maywood, 118 Ill. 61; Weeping Water v. Reed, 21 Neb. 261; Dillon 632, 642, Abbott v. Cottage City, 143 Mass. 521.

Edgar W. Camp, for respondent.

BARTHOLOMEW, J. In 1883 appellant and respondent were, respectively, owners of certain lands within the corporate, but

not the platted, limits of the city of Jamestown. On the 15th day of August, 1883, they entered into a contract in which two named trustees were designated as parties of the first part, and appellant and respondent were the parties of the second part. The contract provided that a certain sum should be raised and placed in the hands of the trustees to be by them expened in improving certain land, belonging to the respondent, for a public park, all of said money to be so expended on or prior to January 1, 1885; and that at any time after said money was so expended, and prior to January 1, 1886, when the city of Jamestown would accept the same, the second parties agreed to dedicate certain lands, including the land on which the improvements were made, to the city of Jamestown as a public park forever: "provided, that the city of Jamestown shall accept said lands, and shall at the time of said acceptance of such land agree to maintain the same as a public park forever, exempt from taxation, and in good repair, and with such buildings and improvements only as shall be suitable to the purposes of a public park, and free from all nuisance of any nature whatsoever." On the same day the common council of the city of Jamestown passed a resolution as follows: " Be it resolved by the city council of the city of Jamestown, D. T., that said city of Jamestown agree with S. K. McGinniss and Adam C. Kidd that at such time before the 1st day of January, A. D. 1885, as the entire sum'of four thousand dollars ($4,000.00) at least shall be expended upon that portion of land agreed by said S. K. McGinniss and Adam C. Kidd to be dedicated to the city of Jamestown as a public park forever, by an instrument of agreement of date August 15,.1883, between said parties and John S. Watson and Lyman N. Cary as trustees, together with such further sums as may be paid into the hands of said trustees for the improvement thereof, and in accordance with the terms of said agreement, to which reference is hereby made, and free from all debts for such improvements or otherwise, and with all improvements that shall have been commenced thereon up to the time of such acceptance and dedication, fully completed and finished. said city council will accept the said land as dedicated, as per the terms of said agreement, as a public park forever,

and will maintain the same exempt from taxation in as good repair as when accepted, and will thereafter put upon such park such improvements only as by them deemed suitable and necessary for the purpose of a public park, and will maintain it free from any nuisance whatsoever." This resolution was not presented to or signed by the mayor.

In pursuance of the foregoing agreement, the trustees proceeded to improve the land for park purposes, the appellant furnishing $3,580 of the money so used, and prior to January 1, 1885, the improvements were completed as contemplated, and the deeds from appellant and respondent for the lands agreed to be dedicated were placed in the hands of the trustees, to be delivered to the city. The court found that these deeds were tendered to the city by the trustees on January 5, 1885. The correctness of this finding is challenged, appellant claiming that the tender was prior to January 1, 1885. In our view the point is immaterial. The deeds were not accepted when tendered, and respondent's deed remained in the trustees' hands ready for delivery until after January 1, 1886. The city took no further action in the matter until December 17, 1885, when the council passed a resolution refusing to accept said lands, or having anything further to do with the matter. It also appears from the pleadings that about January 21, 1886, respondent withdrew his deed from the trustees without the consent of appellant, and deeded the land to the Jamestown College. Appellant's theory of this action seems to be that, by such conveyance of the land to a third party, respondent rendered it impossible to carry out the park project, and impossible for appellant to insist upon specific performance upon the part of the city; that after the parties had incurred large expense in improving the land for park purposes, respondent had no legal right to abandon the project, and devote the lands to other purposes, without the consent of appellant; that the establishment of said park would greatly enhance the value of appellant's adjacent land, and that by the failure to establish the park appellant has been damaged to the extent of his money invested in the improvements, as well as by the loss of such increased value

in his land, and he seeks to recover such damages from respondent.

The trial court found for respondent, apparently on the ground that appellant had failed to establish any damages. We shall not discuss the evidence as to that point, or any of the many questions that are raised that might bear upon the liability of the city. The city is not a party to this action. As we view the pleadings and the facts found, there are other and insuperable obstacles to any recover against this respondent. It is not claimed that there ever was an acceptance on the part of the city of the proposed dedication, or that the park ever had an existence as a city park; on the contrary, it is claimed that the city did not accept, and that respondent has placed it out of the power of appellant to enforce an acceptance. This case does not present any contract for the purchase and sale of realty. There is no element of forfeiture in it, nor is it a case where interest on purchase money can compensate for delay. The contract between the trustees and the parties to this action simply provided that the land should be ready for dedication by January 1, 1885, and then gave the city an option until January 1, 1886, within which to accept such dedication. The resolution passed by the city council on August 15, 1883—and we must not be understood as expressing any opinion as to whether or not such resolution was regularly adopted, or within the powers of the council—purported to bind the city to accept whenever the land was improved as provided in the contract with the trustees. The findings show it was so improved before January 1, 1885. The city did not accept. The delay was not inadvertent and excusable; on the contrary it was willful and intentional, as is indisputably shown by the resolution of December 7, 1885. Hence an acceptance by the city at any time after January 1, 1886, would have given it no right whatever to insist upon performance upon the part of the proposed grantors. See Pom. Eq. Jur. § 1408, and note. At the time the respondent withdrew his deed from the trustees, and conveyed the land to the college, the city certainly had no legal right to object thereto; and the case furnishes us with no evidence of any contractual relations between the parties to this action that would have

enabled either of them, as against the other, to insist upon a dedication at any time after January 1, 1886. We may view it from another standpoint.

It is insisted that the alienation of his land by respondent renders it impossible to insist upon specific performance on the part of the city because the other parties are not in a position to perform on their part. But such alienation was not made until after the contract, if any existed, was broken on the part of the city. Now, if an enforceable contract existed against the city, certainly damages for its breach, if any were sustained, can be recovered. That action is left to appellant, which ought, perhaps, to be a sufficient reason why he ought not to recover against this respondent. But it is clear to us that appellant never had any right of action for specific performance against the city. While the power of a court of equity to thus coerce the legislative branch of a municipal government is very doubtful, (see Wells, Juris. 33 *et seq.*,) yet we do not base our decision on that ground. Both the contract and the resolution provide that the city, when it accepts such dedication, shall agree to maintain the same as a public park forever, in good repair, or in as good repair as when accepted, free from all nuisances whatsoever, and place only such buildings and improvements thereon as shall be suitable to the purposes of a public park. Now, it is evident that these covenants are continuing covenants, and their enforcement would or might require the constant supervision of a court. Courts of equity will never compel specific performance of such contracts. Blanchard v. Railroad Co., 31 Mich. 43, and the extended citations in the reporter's note to that case. Again, every alleged violation of said contract would involve the consideration and determination of questions of fact. Such contracts are never specifically enforced. Caswell v. Gibbs, 33 Mich. 331. The transfer of his land by respondent deprived appellant of no legal right. The judgment of the district court dismissing the complaint is affirmed. All concur.