## BOMER BROTHERS *v.* WILLIAM K. CANADAY.

1. EQUITY. *Contract. Specific performance. Personal property.*
   Equity will not ordinarily decree the specific performance of a contract touching personal property, nor will it specifically enforce a contract to cut trees from lands and saw them into lumber, if the contract be indefinite and uncertain as to the trees to be cut.

2. SAME. *Receiver. Undue tax on the superintendence of court.*
   Equity will not decree specific performance of a contract to cut trees on land and manufacture them into lumber, appointing a receiver to do so, since such a performance would unduly tax the superintendence of the court.

3. SAME.
   The principle upon which courts of equity, by receivers, operate railroads and carry on other like public business is not involved in this case.

FROM the chancery court of Yazoo county.

HON. HENRY C. CONN, Chancellor.

Bomer Brothers, appellants, were complainants in the court

below; Canaday, appellee, was defendant there. Complainants filed their bill in chancery against the defendant below, seeking to restrain defendant, by injunction, from selling or in any way incumbering the title to certain standing timber, and seeking the specific performance of a contract. Complainants, in their bill, allege that they are wholesale lumber dealers at Brownsville, Tennessee, and the defendant is a resident of Yazoo county, Mississippi, engaged in the operation of a sawmill at Phœnix, in said county; that, on the ninth day of February, 1900, the complainants and defendant entered into a contract, whereby the complainants sold a large quantity of standing timber, on certain lands described, to the defendant, and whereby the defendant executed to the complainants his promissory note for \$2,999.76, payable on the ninth day of January, 1901, which said note was renewed; that the first of said notes reserved an express lien on the timber for its payment, but in the execution of the second note, by oversight or mistake, a reservation of such lien was omitted, and charged that complainants were entitled to such lien nevertheless; that, as a part of the original contract, Canaday bound himself to manufacture the standing timber so purchased by him from complainants into lumber, and to ship the same to complainants on certain terms and prices in the bill set forth; that, pursuant to the contract, the complainants began a course of dealing with the defendant, amounting to many thousand dollars, but that the lumber shipped to complainants and paid for under said contract was not manufactured out of the timber mentioned in said agreement, but from timber other than that acquired from the complainants, and that none of the timber so acquired by the complainants had been shipped or sawed; that, at all times since the execution of the contract, the complainants had been fully able and willing and were anxious to carry out the terms and provisions of said contract, etc.; that the defendant was fully able to carry out the terms of the contract, but refuses to so do, without good reason therefor; that complainants sold said

standing timber to the defendant at a price much lower than they could have gotten for it from other persons, and made such sale in consideration of said contract, and that the timber so sold by complainants to defendant remains standing and un-sawed, and that complainants have outstanding contracts to supply their customers with lumber from time to time, which contracts will consume and require all the lumber aforesaid; that, unless said defendant is compelled to comply specifically with said contract, the complainants will be unable to comply with their own contracts and obligations to their customers, and will sustain loss and damage irreparable; that complainants are without adequate remedy at law because such damages as they might recover against defendant for the breach of said contract would be wholly inadequate to reimburse complainants, because of the special practical features and incidents inhering in the subject-matter and terms of said contract, and because it would be impossible in a suit at law to arrive at a legal measure of the damage which complainants have sustained and will sustain; that complainants acquired the said timber under contracts which required the same to be removed from the land within five years' time, and, at the time of filing this bill, only three years remain in which said timber could be removed under the contract held by complainants, of which the defendant was well informed when he executed the contract sued upon, and that, owing to the limited time remaining in which to remove the timber, it would be wholly impracticable to remove the same unless the defendant, who is fully and amply prepared to do so, is compelled to carry out and specifically perform his contract; that the defendant, having legal title to said timber, has it in his power, and complainants have reason to fear that he will transfer the contract to other persons, or will remove said timber and sell the same to other persons, and thus deprive complainants of the benefit of their contract. The prayer of the bill is that a writ of injunction issue restraining the defend-ant from selling or in any way incumbering the title to said

standing timber, and from selling or incumbering the title to
any lumber manufactured therefrom, and, on final hearing,
that a decree be rendered requiring the defendant to specifically
perform his contract, etc., and for the appointment of a re-
ceiver to take charge of said property and carry out and spe-
cifically perform the contract.

The contract, which was made an exhibit to the bill, is as
follows:  " This contract, made and entered into by and be-
tween Bomer Bros., of the first part, and W. K. Canaday, of
the second part (Bomer Bros., of Brownsville, Tenn., and W.
K. Canaday, of Yazoo county, Miss.), viz.:   The party of the
first part this day sells to the party of the second part certain
poplar, ash and oak timber in the county of Yazoo and state of
Mississippi, as per contracts this day transferred by the parties
of the first part to the party of the second part for the sum of
$2,999.76, for which amount he, the said W. K. Canaday, this
day executes his promissory note, with interest from date.
The party of the second part agrees to manufacture said tim-
ber into merchantable lumber, to put same on drying sticks,
and deliver f.o.b. barge at Satartia, on Yazoo river, or f.o.b.
cars at Bentonia, Miss., for the following prices, and sell to
the parties of the first part, viz.:   Twenty-three dollars for
first and second poplar and clear saps thirteen inches and up,
for common and saps $13 per thousand, for white oak $23 per
thousand for first and seconds, and $13 per thousand for com-
mon; the oak to be delivered f.o.b. cars Bentonia.   The party
of the second part also agrees to give (party of the first part)
the refusal of all ash.   The above prices are f. o. b. barge
Satartia, less 2 per centum on f. o. b. cars at Bentonia, net.
The party of the second part (W. K. Canaday) further sells to
the party of the first part (the said Bomer Bros.) all poplar
lumber that he may manufacture from other standing timber
that he now owns in Yazoo county, Miss., at above prices and
terms; there being 5,000,000 feet more of the latter.   The
party of the second part agrees to cut the lumber to the thick-

ness as may be directed by the party of the first part. This 9th day of January, 1900.''

The defendant demurred to the bill generally, setting up the following grounds: Want of equity, multifariousness, adequate remedy at law, that complainants are not entitled to relief prayed for. This demurrer the court below overruled, and defendant moved the court for a dissolution of the injunction on the face of the bill. This motion was overruled, and the defendant then filed a special demurrer to portions of the bill as follows: To so much of the bill as prayed for a specific performance of said contract as to the timber purchased of Bomer Bros., and to so much thereof as prayed for a decree for the purchase money of said timber, the note therefor not being due. The special demurrer was sustained by the court, and from this decree complainants appealed to the supreme court.

*A. S. Buchanan* and *Mayes & Harris*, for appellants.

The point which lies at the foundation of this case is the claim on the part of the appellee that this is a bill for the specific performance of a contract for the sale of chattels, and as such will not be decreed, because the remedy at law in damages is adequate. To this position we offer three distinct replies:

1. The bill is not one for the specific performance of a contract for the sale of property merely personal in its nature, but it is for the specific performance of a contract which plainly savors of the realty. Counsel in their demurrer misconceive, we respectfully submit, the true nature of the contract. *Harrell* v. *Miller*, 35 Miss., 700.

2. It does not follow that, even if the contract were one for the sale and delivery of property purely personal in its nature, the prayer of the bill would be denied. In connection with such contracts, there are often circumstances of equity and considerations of a special nature which will induce courts of

equity to declare an exception to the usual rule and decree specific performance, nevertheless.

3. The objection made, even it were otherwise well taken, cannot be made by a demurrer, but is a defense which must be availed of, if at all, on the hearing; for the reason that the court cannot say, as a matter of law, that a bill will not lie for the specific performance of a contract for the delivery of chattels.

The foregoing propositions are sustained by the following authorities: Waterman on Specific Performance, secs. 16, 17, 19, 28, 29; Fry on Specific Performance, secs. 29, 35; Story's Equity Jurisprudence (10 Ed.) 718.

An objection to the prayer for a specific performance is urged on the ground that the matter which the court is asked to undertake, involves a continuous and personal service, and courts of equity will not essay to enforce a contract specifically under those conditions.

We answer: That the specific performance of a contract is a matter of sound judicial discretion; and while there is such a general rule, it is a rule applied by the courts for their own protection, and not a matter of right with the defendant; and the various cases where specific performance has been refused on that ground, and where it has been granted, notwithstanding that objection, all show that in order to accomplish justice and right, the courts decline to apply that rule in such cases where, on looking over the whole field, they are satisfied that the specific performance, notwithstanding it involves continuous and personal service, will not tax the court unduly.

Now the service which is invoked in this case, is not perpetual as was the case in *Rutland Marble Co.* v. *Ripley*, 10 Wallace, 339; on the other hand, it is only a prayer that a certain quantity of timber standing on definitely described tracts of land shall be cut down and sawed up and delivered to the common carriers. This may be done and, indeed, now must be done, under the original contracts of the complainant

if done at all, within the limited period of two years. On the other hand, the running of a sawmill is no such delicate and highly technical business, involves no such exercise of a judgment purely personal, and scientifically educated, as should deter the court from undertaking to work it out through its receiver. The cases show that many more serious and complicated enterprises have been worked out by the courts just in that manner. There is ample authority to sustain the foregoing positions. Pomeroy's Eq. Jur., note 2 to sec. 1402; *Storer* v. *Great W. Ry.*, 2 Y. & C. Ch., 48; *Sanderson* v. *Cockermouth Ry.*, 11 Beav., 497; *Franklin* v. *Tuton*, 5 Madd., 469; *Middleton* v. *Greenwood*, 2 De. G. J. & S., 142; *Wilson* v. *West Hartlepool Ry.*, 2nd Ed., 475; *Wilson* v. *Northampton, etc., Ry. Co.*, L. R., 9 Ch., 279; *Atty.-Gen.* v. *Mid-Kent Railway, Id.*, 3 Ch., 100. Where defendant has contracted to construct works on land acquired by conveyance from the plaintiff, etc. *So. Wales Ry.* v. *Wythes*, I. K. & J., 186, 200; *Price* v. *Corper, of Penzance*, 4 Hare, 506; *Wilson* v. *Furness Ry.*, L. R. 9 Eq., 28; *Hood* v. *N. E. Ry., Id.*, 5 Ch., 525; 8 Eq., 666; *Firth* v. *Midland Ry., Id.*, 20 (Eq., 100); Where there has been a part performance, so that the defendant is enjoying the benefits in specie, *Price* v. *Corper, of Penzance*, 4 Hare, 506, 509; see also *Stutyvesant* v. *Mayor, etc.*, 11 Paige, 414; (constructing a drain) *Birchett* v. *Bolling*, 5 Munf., 442; (erecting a building) *Whitney* v. *New Haven*, 23 Conn., 624; *Gregory* v. *Ingwerson*, 32 N. J. Eq., 199; (to erect a structure) Story's Eq. Jr., sec. 728 (10 Ed.)

As illustrative cases, the court will find that specific performance has been decreed of a covenant to construct a siding (*Lytton* v. *Great Northern Ry. Co.*, 2 K. & J., 394; *Green* v. *West Cheshire Ry. Co.*, 13 L. R. Eq., 44), to make and maintain crossings and approaches (*Raphael* v. *Thomas Valley Ry. Co.*, 2 L. R. Ch., 147, reversing 2 L. R. Eq., 37; *South & North Ala. R. R. Co.* v. *Highland Ave. & B. R. R. Co.*, 98 Ala., 400; *Aiken* v. *Albany, Vt. & West Shore Ry. Co.*, 123

N. Y., 580; see *Northern Central Ry. Co. Appeal*, 103 Pa., 621), and to construct roads, ways and slips for cattle (*Sanderson* v. *Cockermouth & W. Ry. Co.*, 11 Beav., 497). So, a lease of mines will be specifically enforced (*Wharton* v. *Souttenburgh,* 35 N. J. Eq., 266). Further, in *Stuyvesant* v. *Mayor, etc., of New York,* 11 Paige Ch. (N. Y.), 414, the court decreed the performance of a covenant on the part of the defendant to grade, fence and improve a lot of ground granted to it for a public square, on the ground that the injury caused by the breach of the covenant could not be adequately compensated in damages. Contracts to erect an archway or culvert under a railroad have been enforced (*Storer* v. *Great Western Ry. Co.*, 2 Y. & Coll. Ch., 48), and to erect a wharf at a specified place (*Wilson* v. *Furness Ry. Co.*, 9 L. R. Eq., 28).

A striking illustration of the manner in which the courts, in order to establish a justice, will undertake to enforce specific performance by its receivers of the most complicated, protracted and arduous business transactions is found in the case of railroads. See as follows: *Wolverhampton & Wal. Ry.* v. *London, etc., Ry.*, 16 L. R. Eq., 433; *Wells, Fargo & Co.* v. *Oregon, etc., Ry.*, 15 Fed. Rep., 561; *same* v. *same,* 18 Fed. Rep., 517; *L. E. & W. R. R. Co.* v. *Michigan, etc., R. R. Co.*, 86 Fed. Rep., 840; *Chicago, etc., R. R. Co.* v. *Chicago Coal Co.*, 79 Ill., 121; *D., L. & W. R. R. Co.* v. *Erie Ry.*, 29 N. J. Eq., 298; *Cornwall* v. *Lebanon R. R. Co. Appeal*, 125 Pa., 232; *Prospect Park, etc., R. R. Co.* v. *Coney Island, etc., R. R.*, 144 N. Y., 152; *Joy* v. *St. Louis*, 138 U. S., 1.

*Henry & Barbour, W. W. Coody* and *Barnett & Perrin,* for appellee.

Mr. Pomeroy, in his admirable work on equity jurisprudence, from sections 1400 to 1505, inclusive, succinctly sets forth the general law with reference to the specific performance of contract. The general rules given by him are, that, if the contract be with reference to lands, it will be enforced, but, if it be

with reference to chattels, specific performance will not be decreed, an exception in case of chattels being that the particular chattel has some special value to the owner over and above any pecuniary estimate—the *pretium affectionis*—and where they are unique, rare and incapable of being reproduced by money damages, equity will decree a specific delivery of them to their owner and the specific performance of contracts concerning them. He also states that the granting of the equitable remedy of specific performance is a matter of sound judicial discretion, controlled by established principles of equity and exercised upon a consideration of all the circumstances of each particular case—that, assuming a contract completely concluded and that it belongs to a class capable of being enforced, it must still possess essential elements and incidents before the court will compel its performance. It must be reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it was made. It must be mutual in its obligations and in its remedy, and the contract and the situation of the parties must be such that the remedy will not be harsh or oppressive. The contract may be such that a decree for specific performance would not be nugatory; one that, by its terms, can be specifically enforced, and, finally, it must be such that the court is able to make an efficient decree for its performance, and is able to enforce when made. The remedy is never granted where the plaintiff has a plain, adequate and complete remedy at law.

In *Aston* v. *Robinson*, 49 Miss., 351, the requisites upon which the equity of specific performance arises are as follows: The performance must be necessary; there must be a valuable consideration; it must be practicable; the agreement must be certain and mutual; ordinarily it must not be exerted in reference to or about chattels, because the law assumes that ample compensation can be made in damages for a breach. This case also lays down the doctrine that specific performance is never a matter of right, but of sound legal discretion in the court,

each particular case being dependent upon its peculiar circumstances, but governed by general rules and principles.

In the case at bar, the remedy at law is entirely adequate and complete.

The case of *Scott* v. *Billgerry*, 40 Miss., 119, is very much, in its essential features, like the case at bar, except in that case the controversy was for cotton instead of lumber. In that case the appellee alleged that appellant sold him seventy-five bales of cotton for $3,900; that the money was paid at the time, and the cotton was to be delivered when required, in good order, at Rodney, the contract being evidenced by writing, but that the price of cotton has materially advanced, and that defendant refuses to deliver said cotton, therefore he prays that defendant may be decreed to perform said contract. The part of the decision that we wish to call the court's attention to, begins on page 139 and ends with the first paragraph on page 142. The judge, in delivering the opinion of the court says: "It may be confidently affirmed that no case can be found in the books in which the specific performance of such a contract on such a state of facts, was ever decreed in a court of equity." We have no hesitation in making a similar assertion with regard to this case. The court will observe that nothing was said in the contract of sale to the appellee in the case of *Scott* v. *Billgerry* about the kind of cotton; about the staple of the cotton; about the grade of the cotton; whether it was to class low, middling, or the very highest grade, and yet the court says that he had an adequate remedy at law. At law Mr. Billgerry would have had considerable trouble likely, in making out his case in proving the kind, the staple, the grade of the cotton he bought, and the price of like cotton at the time when he demanded delivery, but this did not excuse him and justify him going into a court of equity.

There can be no decree in this case for specific performance for the further reason that the contract in the case is neither certain, complete nor mutual in the remedy. If material specifi-

cations are omitted, or if material matters are left by the parties obscured or undefined, the courts do not undertake to supply such matters which contracting parties have omitted. The court cannot substitute its own discretion, and so by its own act perfect and enforce a contract. *Blanchard* v. *Detroit*, 31 Mich., 42; Pomeroy, sec. 162; *McKibbin* v. *Brown*, 14 N. J. Eq., 19; *Webster* v. *Brown*, 34 N. W., 676; *Montgomery* v. *Norris*, 1 How., 506; *Nicholls* v. *Williams*, 22 N. J., 63; *Potts* v. *Whitehead*, 20 N. J. Eq., 65; *Publication Co.* v. *Telegraph Co.*, 3 Am. St. Rep., 763; *Gates* v. *Gamble*, 53 Mich., 181; 22 Am. & Eng. Enc. L., 1006.

Would it be practicable for the court, in this case, to enter a decree for specific performance on the contract? Could the court enforce any such decree, if made? Suppose the decree was entered and appellee failed or refused to enter upon its execution, could the court do more than punish him as for contempt? Could the court, by a receiver, undertake the enforcement of the decree? What directions, under the contract in this case, would the court give to the receiver? At the very outset would not the court have to say to the receiver (supposing facilities for sawing and marketing the lumber had been arranged), "I cannot direct you as to the thickness that you shall saw the lumber, nor when you shall begin sawing, or how long continue, but that can be obtained from Bomer Bros., and you will call upon them to know as to that. The court cannot tell you the price which you are to receive for the ash lumber, but you must saw it as Bomer Bros. direct and then give them the refusal of its purchase. At what price and on what terms, I am unable to say, for the contract is silent thereon. In the event they should finally conclude that they do not want the ash, then you can return it to Canaday." Can such a decree as this be, by its terms, specifically enforced?

The case of *Beck* v. *Allison*, 56 N. Y., 356, was to compel certain repairs to a building on account of damage done by fire. The reasoning of the court in this case is conclusive that

specific performance should be refused of all contracts which require the supervision and judgment and skill of the courts, or its officers.

The contract in question in this case requires of Canaday the exercise of his own personal skill, business tact and judgment, and in such a case the court will not undertake enforcement of the contract. The authorities are numerous and the principle runs through several cases already cited in this brief that the courts cannot undertake to decree specific performance of personal service.

WHITFIELD, C. J., delivered the opinion of the court.

Doubtless there are cases where equity will decree the specific performance of contracts for the delivery up of chattels, even, other than those cases in which a *pretium affectionis* attaches to them; but they are exceptional cases. It is claimed here, too, that this contract savors of the realty, since it is for the sale of standing trees. But, as said by the supreme court of North Carolina in *Paddock* v. *Davenport*, 107 N. C., at page 717 (12 S. E., 465), "The trees were purchased with a view to their severance from the soil, and thus being converted into personal property;" and it is in this converted state that they were to be delivered—in the shape of manufactured lumber—to appellants. Passing by, however, the very ingenious and learned argument that this is a contract touching realty, we think it is clear, for two reasons, that this bill cannot be maintained: First, because the contract is too uncertain, vague and indefinite in its terms; and, second, because, if it were clear and definite, its performance by the receiver of the court would unduly tax the superintendence of the court.

The cases in which receivers have, under the decrees of the court, specifically performed contracts for the construction and operation of railroads rest upon the principle that the public have a deep interest in the performance of such contracts, and that, " when the inconvenience of the courts in acting is more

than counterbalanced by the inconvenience of the public if they do not act, the interest of the public will prevail." The case of *City of Burlington* v. *Burlington Water Co.*, 86 Iowa, 266 (53 N. W. Rep., 246), falls within this principle. See Mr. Freeman's note to *Standard Fashion Co.* v. *Siegel-Cooper Co.* (N. Y. App.), 68 Am. St. Rep., at page 760, s.o. 51 N. E. Rep., 408; 43 L. R. A., 854. This exceptional doctrine has no application in a contract between private citizens about a private matter, wholly unaffected with a public interest. The best discussion we have seen of the class of cases into which this falls is in the above note. Mr. Freeman says, at page 753: "There are two classes of cases in which, in a suit for the specific performance of a contract, equity will refuse to grant a decree, although there is no question as to the validity, certainty, mutuality or justice of the contract, and although there is no doubt that the defendant is entirely able to, and in all justice should, perform his contract. The first class, of which instances are rare, embraces those cases in which, by reason of the nature of the subject-matter of the contract sued upon, the court is unable to properly frame a decree for specific performance—as where the contract was to refrain from divulging the secret of an invention (*Newbery* v. *James*, 2 Mer., 446), or of a patent medicine (*Williams* v. *Williams*, 3 Mer., 157), or where it is sought to enforce the common covenants of husbandry (*Rayner* v. *Stone*, 2 Eden, 128), or where the contract is for the sale of good will (*Baxter* v. *Conolly*, 1 Jac. & W., 576; *Coslake* v. *Till*, 1 Russ., 376). The second class embraces the numerous cases in which, by reason of the nature of the thing contracted to be done, a decree of specific performance must prove an ineffective or inexpedient remedy. While equity aims to supply a remedy wherever there is a right that cannot be adequately enforced at law, it refuses to be drawn into the absurdity of substituting for an imperfect legal remedy an equitable one less perfect, and more cumbersome and inexpedient. Accordingly, where the enforcement

of a decree of specific performance would unduly tax the attention and superintendence of the court; where it would necessitate the compelling of personal acts involving the exercise of special skill, taste or judgment; where the performance of the contract must stretch over a considerable time; where the contract is so complex in its nature that it would be difficult in any case to determine whether an alleged disobedience of the court's decree was in fact a disobedience, and where the interests of other suitors and the general administration of justice must suffer if the court were to give the necessary care and oversight to the enforcement of its decree—in all these cases, by the general rule, a decree of specific performance will be refused. But the decree of specific performance rests within the discretion of the court. It is not generally granted as a matter of right, and respect for precedent does not influence equity courts as it does those of law." Again, he says, at page 754: "The proposition is also settled that equity will not decree specific performance of a contract where the enforcement of its decree would involve the direct superintendence of the court. *Ross* v. *Railway Co.*, 1 Wool., 26 (Fed. Cas., No. 12,080); *Fallon* v. *Railroad Co.*, 1 Dill., 121 (Fed. Cas., No. 4,629); *Blanch ard* v. *Railroad Co.*, 31 Mich., 43 (18 Am. Rep., 142); *Kidd* v. *McGinnis*, 1 N. D., 331 (48 N. W. Rep., 22); *Danforth* v. *Railway Co.*, 30 N. J. Eq., 12; *McCann* v. *Railroad Co.*, 2 Tenn. Ch., 773." In accordance with this general principle, it is now well settled, contrary to the ruling in the earlier cases, that equity will not decree specific performance of contracts for building and repairing houses. See *Id.*, 755; 22 Am. & Eng. Enc. L. (1st ed.), 996.

This contract, as to its uncertainty, falls within the condemnation of the principle well expressed in *Ikerd* v. *Beavers*, 106 Ind., 483 (7 N. E., 326), quoted in *Louisville N. A. & C. Ry. Co.* v. *Bodenschatz-Bedford Stone Co.*, 141 Ind., 264 (39 N. E., 707), where the court says: "In *Ikerd* v. *Beavers*, *supra*, Mitchell, J., speaking for this court, said: 'With re-

spect to its essential elements, the qualities of completeness, certainty and fairness, the contract set out in the complaint does not present the requisites warranting a decree for specific performance. Courts can only proceed in cases like this when the parties have themselves agreed upon all the material and necessary details of their bargain. If any of these are omitted, or left obscure or undefined, so as to leave the intention of the parties uncertain respecting the substantial terms of the contract, the case is not one for specific performance. Without supplying all its essential details, no court could so frame its decree as to afford any adequate protection to the defendant, nor can a judgment be entered which would be a final determination of the rights of all the parties.' "

What, now, are the provisions of this contract, as to these two grounds of objection, uncertainty, and the undue taxing of the superintendence of the court? We quote a well-put extract from appellee's brief: "The standing timber sold the defendant, the contract concerning which is to be specifically enforced, is situated in two counties—Yazoo and Warren. It is scattered over more than 5,000 acres of land. Before a decree for specific performance can be enforced, this timber must be located. Then it must be cut; then hauled; then sawed into lumber; then dried; then delivered to parties at Satartia or Bentonia, and classified. Where the court or its receiver is to get the labor, teams, sawmill and other machinery, and the money to do all this, nowhere appears; but yet it must be done. Again, in some cases all the poplar, oak and ash, on certain described lands have been sold; in other cases a certain number of poplar, oak and ash trees, without other more definite description; and in another all merchantable timber. If a decree for specific performance is granted, how is the court to know, without personal supervision, when its order has been carried out? In the cases where all the poplar, oak and ash were sold, is every tree of the variety mentioned, regardless of its size and condition, to be converted into lumber? In

the cases where only a certain number of trees is conveyed, who is to say what trees are intended? In the case where all merchantable timber is conveyed, who is to decide what is merchantable timber?''

Undoubtedly, most of the lumber is indefinitely described where a certain number of poplar and ash trees is conveyed, how many ash and how many poplar are meant, and what particular trees are to be taken.

Again, it is wholly optional with appellants whether to take the ash at all or not, and no price whatever is fixed for the ash. There are ten different bodies of timber in Yazoo county and four in Warren. Of the ten in Yazoo, those in paragraphs 1, 5 and 10, only, of the bill, can be said to be definitely described; and only the timber in paragraph 4 of the trees in Warren county. How is the court to be expected to first locate the trees in the other paragraphs, and designate the number of each kind to be taken? Again, appellant is to specify to what thickness the lumber is to be cut. In view of the very great uncertainty in the terms of this contract, and also because, if certain, to require its specific performance would unduly tax the superintendence of the court, it is clear, we think, that the accurate and learned chancellor properly sustained the demurrer.

We have not thought it necessary to refer to the fact that no decree could be made for present performance, and that three years of the five left would be required in which to carry out the contract; or to the admission in the bill that the remedy at law might be adequate through successive replevin suits but for, as is alleged, the multiplicity of such suits which would be necessary. We rest our decree on the two points indicated.

*Affirmed.*