PHILP *v.* DANA.

[83 South. 745, In Banc No. 21009.]

1. SPECIFIC PERFORMANCE. *Correspondence contract which does not describe land is insufficient.*

    Where the contract for the sale of land which consisted of correspondence between the parties only described the lands as vendor's land in a certain section and so far as vendor's letters were concerned only as her one hundred and sixty acres in a certain county, there was no sufficient certainty in the description to entitle the purchaser to specific performance.

2. SPECIFIC PERFORMANCE. *Acceptance of offer not specifying details and requiring acts not in offer is insufficient.*

    Where the previous correspondence between the parties had not specified all of the terms for the sale of land even the pur-

chaser's name not being mentioned, and the final acceptance required the vendor to send the deed to a bank where the purchaser resided to deliver on the payment of the money and delivery of the notes, the contract cannot be specifically enforced.

3. SAME.

   Before specific performance will be decreed, the tender of performance on the part of the buyer, that is to say, the payment of the money and the delivery of the notes, must be made to the other party at her place of business or residence.

APPEAL from the chancery court of Quitman county. Hon. W. F. Gee, Chancellor.

Bill for specific performance by J. M. Philp against Chas. S. Dana. From a decree for defendant, complainant appeals.

The facts are fully stated in the opinion of the court.

*W. M. Donaldson,* for appellant.

The gist of the argument on behalf of the demurrer is, or rather was, that there was no binding contract, because the letters were written by W. M. Donaldson, attorney for appellant, instead of by appellant for himself, and that no proper tender of the cash consideration had been made, so as to entitle the appellant to a decree of specific performance of the contract which would bind.

As to the first proposition, while it is nowhere stated in the pleadings and therefore is taken as true, that the attorney did not have a written authority to negotiate the purchase, we think there is ample authority for holding that appellee could bind herself and did so bind herself, by her letters to the attorney in which she agreed to sell the land to attorney's client at a price named in the letter. It was shown in the first letter passing between the parties that the inquiry was made as an attorney for some one, though the name of the real party in interest was not disclosed by the letter and

appellee could not have been misled in any way by it.

If this were a suit by an agent or attorney of the appellee for commissions for making sale of the land, there would be no doubt of the court holding that, although the owner had made no written contract with the agent or attorney to sell, she would be bound by her agreement to pay commissions. This has been held by this court on numerous occasions and we see no reason why the rule should not work the other way about, and if a principal authorize his agents to purchase lands for him, and in pursuance of such authority, although it be not in writing, such agent contracts for the purchase of lands, the principals would be bound by the act of his agent. The fifth ground of the demurrer (record page 16) sets up that the appellee did not become bound for the reason that there was no contract which would bind appellant. We submit that appellant did become bound by the act of his attorney, to purchase the land at the agreed price. See *Hudson* v. *Thompson,* 70 So. 428.

It has been held in the case of *Stonewall Mfg. Co.* v. *Peek,* 63 Miss. 342, that one has a right to sue on a contract of purchase of personal property made for him by his agent, although the fact of the agency was not disclosed at the time. *Stonewall Mfg. Co.* v. *Peek,* 63 Miss. 342.

It is said to be the general rule, that, as a corollary to the well-recognized principle that the rights of the other contracting party are not affected by the disclosure of a theretofore unknown principal, the rule is elementary that an undisclosed principal may appear and hold the other party to the contract made with the agent. See 31 Cyc., page 1598.

It is said, however, that a person has a right to know with whom he will contract, and he cannot have another person thrust upon him against his expressed will. *Ibid.* In this case, there was no expressed will against

contracting with Mr. Philp, Mrs. Dana had knowledge that the attorney was acting for some one else, and made no objection when informed that Mr. Philp was the man with whom she was contracting. The only objection, was that she had decided the price she had asked for the land was insufficient.

It is further said in the same authority (Cyc., page 1600) that the rule is not varied by the fact that such contract was in writing. By the seventh ground of the demurrer, it is insisted that there was no offer of performance by the appellant. We think the bill discloses an ample offer of performance. We do not, however, think it obligatory on us to have gone to Neshoba, Tenn., or elsewhere and there counted out the two thousand dollars agreed to be paid in order to show offer of performance on our part. We believe the offer contained in the bill is sufficient offer to comply with the terms of the contract, where it is alleged after setting out the terms of the contract as contained in the letters to appellee "all of which the complainant is now ready and willing to do, and here offers to the court fully to comply with all the terms of said contract as contained in said letters. All of which he has heretofore offered and still offers to perform all the said agreements made for him by his said attorney as aforesaid, and if required so to do, will pay said sum of two thousand dollars into this court, and now stands ready to do so, as well as to execute said notes and deed of trust."

However, we do not think it necessary that we should offer to perform. The right to specific performance grows out of the contract, and not out of the breach of it. 36 Cyc., page 702. And offer or performance was further made unnecessary for the appellant by reason of the fact that appellee had expressly repudiated the contract. It is said "where the vendor has repudiated the agreement thus making it appear that if the tender were made, its acceptance would be refused tender or

offer by the vendee before suit is unnecessary. 36 Cyc., page 705. Equity does not require a useless formality. *Ibid.*

We recognize the principle that specific performance is not a matter of right, but in the discretion of the court. But that discretion is largely a matter of course and the right or discretion of the court in such matters is where land is involved, or has been the subject-matter of agreement is not controlled, nor is the jurisdiction to enforce specific performance dependent upon the inadequacy of the remedy at law. It is as much a matter of course for courts of equity to decree specific performance of a contract for the conveyance of lands, as it is for courts of law to give damages for the breach. 36 Cyc., pages 552, 553.

We respectfully submit that the court below should have overruled the demurrer, and that now this cause should be reversed.

*St. John Wadell, D. J. Allen, Jr.,* and *Jas. R. McDowell* for appellee.

First: It is not every contract for the sale and purchase of real estate which a court of equity will require to be specifically performed; in other words, a person is not entitled to specific performance of a contract for the sale of real estate as a matter of course, but must allege and prove that, unless the contract be specifically performed, he will sustain damages of such nature that money compensation, in an action at law will not be full and adequate compensation. Specific performance of such a contract, under the decree of the court, is an extraordinary relief, and to become entitled to such relief, the party seeking it must allege and prove that he has not a full, complete and adequate remedy at law, in an action for damages sustained by reason of a breach

of such contract, that is, that a court of law cannot ad-minister full and complete relief in the premises.

In the instant case, it is very evident that the sole ground of complaint is the enhanced value of the real estate over the price for which complainant hoped to ac-quire it. This identical proposition has been decided by the supreme court of Mississippi, and we content ourselves, without citing other authorities, with quoting from the opinion of this court in the case of *Curtis et al.* v. *Blair,* 26 Miss. 309, quoting from page 327 of the report: "Again, it appears from the pleadings and proofs in this case, that the ground of contro-versy is the mere pecuniary value of the lands in-dispute. Both parties are contending for them, because they were worth more in the market than was proposed to be paid for them by Blair. The damages, therefore, for a breach of the contract, to be recovered in an action at law, would afford ample redress; and courts of equity, in such cases will not interfere, except under special circumstances."

"In *Hester* v. *Hooker,* 7 Smede & Marshall, 778, it is said by this court, in speaking of this character; that no certain, definite rule can be laid down which would determine when a party was or was not entitled to such relief. Cases are numerous where both bill and cross-bill have been dismissed, and the parties respec-tively left to their remedies at law. Where the com-plainant has not done all that he stipulated to do, or has not placed himself in a situation to be ready to do so, upon compliance on the other side, the court will not interpose in his behalf." Citing: 1 Sugden on Vendors, section 202; *Hepburn* v. *Dunlop,* 1 Wheat. 197; *Hepburn* v. *Auld,* 5 Cranch. 262; *Hatch* v. *Cobb,* 4 Johns. Ch. R. 559, 5 J. C. R. 193.

Second: No valid, binding and enforcible contract is alleged in the complainant's bill; that is to say, the correspondence between Mr. Donaldson and Mrs. Dana,

relied upon as constituting the contract for the sale of the land in controversy, do not, taken singly or together, constitute a valid, binding and enforcible contract for the sale of lands for several reasons. It will be noted that this correspondence consists of three letters written by Mr. Donaldson to Mrs. Dana and two letters written by Mrs. Dana to Mr. Donaldson. Mr. Donaldson's first letter (Under date of July 16, 1919) was a mere inquiry as to whether Mrs. Dana would entertain an offer for the land, and, if so, what price she would demand and upon what terms she might be willing to sell. This letter was far short of an offer on the part of Mr. Donaldson to purchase the land at any price or upon any terms; it amounted to nothing more than an inquiry. Mrs. Dana's reply to that letter (written by her on July 28, 1919) simply advised Mr. Donaldson that her price was twenty-five dollars per acre, that is, that she thought that sum represented the present value of the land; this letter was not an offer to sell the land to Donaldson or any other person for that sum or for any other sum. The most that could be said as to the effect of this letter is that it possibly invited an offer to buy at that price, but it certainly cannot be said that this letter in itself was an offer to Mr. Donaldson to sell the land to him at that price. The parties were simply negotiating with each other; sounding each other out. It will be noted, further, that Mr. Donaldson did not make the inquiry on behalf of himself, but was professedly acting for an undisclosed principal, and the name of the proposed purchaser was not disclosed to Mrs. Dana until the deed was submitted to her for execution. Inasmuch as she was to receive only two thousand dollars in cash, and the remainder was to be evidenced by three annual notes of the purchaser, it is of course, readily perceived that the identity of the purchaser (who was to sign the notes) was an important factor in the proposed sale, and Mrs. Dana

was not advised even as to the name, much less the financial responsibility, of the proposed purchaser, until she was confronted with the deed, which she declined to execute. We contend that the submission of this deed together with the purchase money notes and deed of trust, constituted the first *bona-fide* offer to purchase the land, and Mrs. Dana, being at full liberty up to that time either to accept or decline the offer, elected to decline; and her refusal to accept his offer affords the complainant no just ground for complainant to redress which a court of equity will interpose.

In the case of *Haydock* v. *Stow*, 40 N. Y. 363, the defendant had executed an instrument in the following language: "I hereby authorize and empower Peck, Hillman & Parks, agents for me, to sell the following described property (here follows a descripton of the lands) : to be sold within —— days from this date on the following terms, viz; three hundred dollars per acre cash, on delivery of deed, or fifteen thousand dollars can remain on bond and mortgage for three or five years, with interest semiannually, if desired by the purchaser; reserving the right to withdraw the property at any time before sale, by giving Peck, Hillman & Parks notice thereof." Subsequently, the plaintiff wrote across the face of the foregoing instrument: "I hereby agree to purchase the property herein nentioned, upon terms expressed," signing the indorsement.

The supreme court of New York held that these instruments taken either separately or together did not form a contract for the sale of land binding upon the owner; nor did his subsequent parol consent to the terms of sale give validity to the transaction.

Again, the name of the proposed purchaser was not contained in the original inquiry written by Mr. Donaldson, and we submit that, in order to constitute a valid, binding and enforcible contract the name of the principal must be disclosed, so that the obligations will be

mutual. *Crafton* v. *Cummings,* 99 United States Reports, 100 25 Law. Ed. 366; *Mt. Govern* v. *Hern,* 10 L. R. A. (Mass.) 815. The rule is succinctly stated by the supreme court of appeals of Virginia, in the case of *Ford* v. *Euker,* 9 S. E. 500.

So, in the case at bar, we pertinently inquire: Whether, inasmuch as Mr. Philp was not bound to buy, was Mrs. Dana bound to convey? To so hold would mean that equity will take cognizance of a contract without mutual and corresponding obligations. Will this court say that this contract binding on Mr. Philp only at his pleasure and election, is absolutely and at all events binding upon the other party, Mrs. Dana? We apprehend not.

In the case of *Keene* v. *Lowenthal,* 83 Miss. 204, it was held by this court, that ''Statements made by the owner of land that he will sell the same to a designated person, contained in private letters of the owner to his broker in regard to the latter's fees, are not alone sufficient to sustain a bill brought by such person for specific performance of a contract of sale.''

Another fatal objection to the alleged contract is that the correspondence passing between Mr. Donaldson and Mrs. Dana does not conform to the requirements of a complete contract, in which all details are arranged. For instance, while Mrs. Dana, in her letter of July 28, 1919, stated ''My price is thirty-five dollars per acre; the payments two thousand dollars down, remainder in three yearly payments to draw six per cent. interest,'' she did not agree to accept a mortgage or deed of trust upon the land as the sole security of the deferred payments. It might very well, be too, that the personal financial standing of the purchaser and the consequent worth of his personal notes might have formed an important factor with the owner of the land; *non constant,* the owner might have wished addition to a lien on the land for the payment of the

121 Miss.—45.

deferred installments of purchase money. *Welch* v. *Williams,* 85 Miss. 301.

Our argument to the effect that the letter of Mr. Donaldson written on July 16, 1919, and Mrs. Dana's reply thereto, dated July 28, 1919, was a mere negotiation for an offer, and did not constitute a valid, binding and enforcible contract on the part of Mr. Donaldson or his client to purchase, or on the part of Mrs. Dana to convey, does no violence to the real understanding of the parties. For Mr. Donaldson, in his last letter to Mrs. Dana, under date of August 18, 1919, states Mr. Philp is anxious to begin some work on the land, if he is to get it."

Thus, impliedly recognizing Mrs. Dana's liberty either to accept or reject the offer as contained in Mr. Donaldson's letter of August 6, 1919, in which he enclosed a deed, deed of trust and notes.

Third: The complainant has never offered a sufficient compliance with the contract, if there was a contract in existence. Mrs. Dana, in her letter of July 28, 1919, expressly stipulated that a cash payment of two thousand dollars would be required in the event a sale should be made. In Mr. Donaldson's letter of August 6, 1919, forwarding her the deed for execution and enclosing for inspection the deed of trust and notes proposed to be executed by the purchaser, Mr. Donaldson makes this request: "If satisfactory, sign and acknowledge the deed and return to me or one of the banks here with instructions to deliver when the notes are signed and turned over."

It is to be noted that there is no offer to pay, nor stipulation for the payment, of the cash payment of two thousand dollars which Mrs. Dana, in her letter of July 28th had required; nor was there any offer that Mr. Philp would secure the notes by executing the deed of trust, or any security assuring that he would do so. The demand made by Mr. Donaldson, is that the deed

should be delivered when the notes are signed and turned over, and no mention is made that the cash payment shall be first required or that the note should be secured by the deed of trust.

Mrs. Dana's letter of July 28, 1919, in which she stated the price at which she held the land, constituted a mere naked offer, for which no consideration whatever was paid or offered. In such cases, the rule is announced by the supreme court of Colorado, in the case of *Rude* v. *Levy*, 43 Col. 482, 96 Pac. 560; 24 L. R. A. (New Series) 91: "It follows from the foregoing that, whatever the rule might be in this regard as to a regular and binding contract, we must hold that, in connection with a naked option or offer to sell, even though the same be in writing, under circumstances like those here presented, a full and proper tender to the vendor of the purchase price or other consideration, in accordance with the terms of the instrument, is as essential condition precedent to a suit for specific performance." *Curts et al.* v. *Blair*, 26 Miss. 309.

In the case at bar, the complainant did not tender to the defendant, or execute, a deed of trust to secure the payment of the purchase money notes or offer any security for the same whatever; nor did he offer to pay upon delivery of the deed the stipulated and required cash payment of two thousand dollars.

The material facts in the case at bar are strikingly similar to the facts in the case of *Robinson* v. *Weller*, 91 Ga. 704, 8 S. E. 447.

In conclusion, we desire to impress upon the court that this is a suit filed by an undisclosed principal to enforce specific performance of a contract alleged to have been made for his benefit by his agent and attorney and that there is quite a difference in this present suit and the decree of proof required than there would be if this were a suit instituted by Mr. Philp's attorney, Mr. Donaldson, for commissions. Construing Mrs. Dana's

letter of July 28th in a light most favorable to the complainant, it amounted to a mere offer to list the lands with Mr. Donaldson for sale at a stipulated price and given terms. Whether, in a suit brought by Mr. Donaldson for breach of the supposed contract with him he would be entitled to recover any profit which he might have made by selling the property at an enhanced figure, is a question not raised nor necessary to be decided in the present case, and is a query which may be left open for determination. Whatever Mr. Donaldson's rights, remedy and relief might be, we respectfully urge and insist that the present appellant, J. M. Philp, not being shown to be connected with or bound by the supposed negotiations with Mrs. Dana, he is not entitled to a decree for the specific performance of such supposed contract.

We respectfully submit that the demurrer to the bill of complaint was rightfully sustained; that the bill does not allege a cause of action entitling the complainant to the relief extraordinarily sought therein; and that the decree of the Chancellor dismissing the bill should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant filed a bill in the chancery court to enforce specific performance of a contract for the sale of land. The alleged contract was based on correspondence. Mr. Donaldson wrote appellee as follows:

"I understand that you probably own one hundred and sixty acres of land in section 7, township 27, range 1 west in Quitman county, Miss., which you would probably sell. If this is so, I would be glad to have you price the same to me, giving me your best cash price, also your best price on terms, and what kind of terms you would be willing to make in the events of the sale.

"I have a client who is interested in this piece of land and he understands that you are the owner. (Signed) W. M. Donaldson."

To this letter the appellee replied as follows: "Your letter in regard to the one hundred and sixty acres of land which I own in Quitman Co. is received.

"My price is thirty five dollars an acre. The payments two thousand dollars down, the remainder in three yearly payments to draw six per cent interest. (signed) Mrs. Charles S. Dana."

On August sixth Donaldson wrote the following letter: Your letter of the forth received, and noted. I had already taken up the matter of the sale of the land with the man I had in mind and told him what it could be had for, and he agreed to take it at thirty-five dollars per acre, the price named in your first letter. Therefore I could not raise the price on him in order to make a commision. I thought as you were getting more than a hundred per cent. profit, you might be willing to allow the usual commission for making sales, and have practically closed the deal, and I will therefore let it go through, even if I do not get anything out of it.

"Of course, I can only blame myself for not getting anything for my effort in selling the place, but it will teach me to be a little more careful the next time.

"I have prepared the deed, deed of trust and notes in accordance with your first letter, dating them all as of August 1, 1919, which I herewith submit to you for your signature and approval. If satisfactory, sign and acknowledge the deed, and return to me or one of the banks here with instructions to deliver when the notes are sign-ed and turned over.

"Sorry I have lost my time and postage, but suppose it cannot now be helped.

(Signed) W.M. Donaldson."

It will be noted from this last letter that the appellee wrote a letter on the 4th of August, the contents of which do not appear in the record. The bill for specific performance alleged with reference to the ownership of land involved in the suit as follows: "Your complainant

would further show to the court on July 16, 1919, and prior thereto the defendant was the owner in fee simple of the lands in Quitman county, Miss., known and described as the Northeast quarter of section 7, township 27, range 1 West and is still the record owner of said lands at the filing of this bill.''

The bill sets out by averment that the letters above set out passed between the said Donaldson (who is alleged to have been attorney and acting for the appellant) and the appellee demurred to the bill on several grounds, and the demurrer was sustained and the bill dismissed, from which decree this appeal is prosecuted.

The bill does not allege that the appellee was not the owner of other lands in the said county or the said section, township, and range. It will be noted from the correspondence that no particular one hundred and sixty acres of land was described therein. The appellant sent unsigned notes and an unsigned deed of trust and an unsigned deed, with the request that the appellee sign the deed and return it to Donaldson or to a bank, to be delivered on the signing of the notes and deed of trust.

. The bill did not have attached, nor was there tendered with the bill, any money or any signed notes and deed of trust, but the bill merely offered to pay the money and sign them after decree for specific performance.

We do not think that the bill presents a proper case for a specific performance. There is no description of the property to be conveyed in the correspondence. The description contained in the correspondence could be applied to any land in said sections, township and range, and so far as the letters of the appellee are concerned it merely refers to one hundred and sixty acres of land in Quitman county. In *Welch* v. *Williams,* 85 Miss. 301, 37, So. 561, our court said:

The elementary general rule, as frequently enunciated in reference to the enforcement of specific performance of contracts, so far as relates to the particular branch

of the subject here presented for consideration, is that the contract must be specific and distinct in its *terms,* plainly show with certainty that the minds of the parties had met and mutually agreed as to all its details upon the offer made on the one hand, and accepted upon the other. If any of these requisites be lacking, specific performance will not be decreed by court of equity.''

This court has held in several cases that to enforce specific performance there must be certainty in the description of the thing to be performed before the court will decree specific performance. *Everman* v. *Herndon,* 71 Miss. 823, 15 So. 135; *Montgomery* v. *Norris,* 1 How. (Miss.) 499; *Beaver* v. *Crump,* 76 Miss. 34, 23 So. 432; *Romer* v. *Cannady,* 79 Miss. 222, 30 So. 638, 55 L. R. A. 328, 89 Am. St. Rep. 593.

The correspondence relied on does not disclose, until the notes and deed of trust were sent to appellee, who the purchaser was, nor does the bill disclose the financial condition of the appellant. It does not appear what kind of notes were intended to be executed for the deferred payments; whether such notes were to be bankable notes nor whether payable to order or to bearer, or whether the note was to carry a vendor's lien or not. It is manifest that the details of the transaction would have to be settled by further agreement. Again the acceptance was not accompanied with the cash payment nor with executed papers sufficiently explicit to have closed the transaction by their acceptance by the appellee, before a specific performance will be decreed the tender of performance on the part of the appellant; that is to say, the payment of the money and the delivery of the notes, must be made to the other party at her place of buisness or residence, and this was never done. *Robinson* v. *Weller,* 81 Ga. 704, 8 S .E. 447. In that case Mrs. Weller advertised property for sale as follows:

''For sale my place in East Rome, corner Howard avenue and E. T. R. R. adjoining Mr. H. B. Parks, for price

address me at 531 Montgomery avenue, Chattanooga, Tennessee.''

To this notice Robinson addressed a communication to Mrs. Weller as follows:''You will please quote me your lowest cash figure, one-third cash, balance in twelve and eighteen month's time on lot adjoining park East Rome, and advertised in the Morning Courier. An early reply will oblige. Thos. L. Robinson.''

To this letter Mrs. Weller replies as follows: ''Received your card with four others asking the same question. In reply I ask two thousand dollars for my place, one-third cash, balance in twelve and eighteen months with legal interest on it.''

To this Robinson replied by telegram as follows: ''Offer accepted. Money ready. Send deeds at once.''
This telegram was followed by letter as follows:

''Your letter received offering me your house and lot in East Rome at two thousand dollars, one-third cash one-third twelve months and one-third in eighteen months with legal interest on deferred payments. I wired you this a. m.. 'Money ready, offer accepted, send deeds at once.'. I am prepared to make the necessary papers and would be pleased to have deeds come foward promptly. This price seems a little full and perhaps you would prefer to discount it slightly and get a cash payment in full for the place. If so let me know and I think I can arrange it.''

Mrs. Weller wrote Robinson in reply: I am sorry to write you but just after writing you I received a better offer. I have not accepted any offer yet. I received three telegrams to-day.''

With this evidence the testimony closed and the defendant demurred to the evidence and the court granted nonsuit holding that the plaintiff could not recover because the correspondence did not amount to a complete contract between the parties. Upon appeal the Georgia supreme court said:

It is true that a contract can be made by correspondence through the mail as well as when the parties are together, and the same rules will apply in either case. But in order to make any sort of contract, the offer of the seller must be accepted by the purchaser, unequivocally, unconditionally, and without variance of any sort there must be a mutual consent of the parties thereto and they must assent to the same thing in the same sense. An absolute acceptance of a proposal, coupled with a condition, will not be a complete contract because there does not exist the requisite mutual assent to the same thing in the same sense. Both parties must assent to the same thing to make a binding contract between them. Applying these principles to the facts of this case, we find: (1) An advertisement in the newspaper by Mrs. Weller of a certain house and lot for sale; (2) a postal card addressed to Mrs. Weller by the plaintiff inquiring as to her price and terms; (3) a letter from Mrs. Weller, the defendant, stating her price and terms; (4) a telegram from the plaintiff to the defendant, saying: Offer accepted, money ready; send deeds at once,—and a letter of the same date amplifying the telegram and stating the same thing in substance."

The court held that her offer meant that she would accept the cash at her place of residence in Chattanooga, and that she was not compelled to make the deeds and send them to Rome, Ga., nor go to Rome, Ga., for the cash payment, and held that the above did not constitute a binding contract. It will be noted that the letter sending the deeds and notes to appellee above quoted closed with the following:

"If satisfactory, sign and acknowledge the deed and return to me or one of the banks here with instructions to deliver when the notes are signed and turned over."

This letter carries with it the recognition that the appellee is to approve the papers sent, and it is silent as to payment of money. We think the appellee was en-

titled to the right to pass upon the solvency of the buyer and the character of security for the deferred payments which she would demand. She was not compelled to take a deed of trust but could require a bankable note, and had a right to have these delivered to her at her place of residence, and if this was not done the complainant was not entitled to the relief prayed for.

The court below having reached the same result, the judgment will be affirmed.

*Affirmed.*