FOWLER *v.* NUNNERY.

[89 South. 156.   No. 21956.]

1. SPECIFIC PERFORMANCE. *Requisites for allowance of remedy stated.*
   Before a court of equity will enforce a specific contract for the sale of lands, the contract must be specific and distinct in its terms and must show with certainty that the minds of the parties have met and mutually agreed upon all the details. There must be an offer upon the one hand and an unqualified acceptance of this offer upon the other; if any of these requisites be lacking, specific performance will not be decreed.

2. VENDOR AND PURCHASER. *Request to sign deed and to draw on vendee for price held no acceptance of offer to sell for cash.*
   Where an offer to sell lands is for one thousand five-hundred dollars net cash, and the proposed buyer executes a deed misdescribing the land and requests the proposed seller to sign the deed and draw upon him for the purchase price, this is not an

acceptance of the offer as made, but is in reality a counter proposition, upon which proposition a court of equity will not decree a specific performance of the contract.

APPEAL from chancery court of Pike county.

HON. R. W. CUTRER, Chancellor.

Suit by A. D. Nunnery against W. C. Fowler for specific performance. From a decree for complainant, defendant appeals. Reversed and dismissed.

*Gex, Waller & Morse,* for appellant.

It is too well settled in Mississippi to need much argument that when a proposition is made for the sale of property by a proposed vendor for cash that the vendee must tender the cash to the vendor, at his place of residence before he can demand specific performance, or can deny the proposed vendor the right of withdrawing an offer he has made for the sale of the property. It would be useless to multiply authority on this question. The leading case of *Philp* v. *Dana,* reporter in 83 So. 745, decided on the 8th day of March, 1920, sets that question at rest. That case, if you please, fits the facts of this one like a blanket.

In that case, the proposed vendor had agreed to sell her property for a certain amount in cash. The offer was accepted, but the cash was not tendered with the deed. The proposed vendor was requested to send the deed not as in this case, to a certain bank of the vendee's selection, but to any bank, that the vendor decided upon making that case in a way stronger than the one at issue.

In passing on the proposed purchaser's contention that under these facts, he was entitled to a deed by way of specific performance, Judge ETHRIDGE said in part as follows: "Again the acceptance was not accompanied with the cash payment nor with executed papers sufficiently explicit to have closed the transaction by their acceptance by the appellee. Before a specific performance will be decreed the tender of performance on the part of the appellant, that

is to say, the payment of the money and the delivery of the notes, must be made to the other party at her place of business or residence, and this was never done. *Robinson* v. *Weller,* 81 Ga. 704, 8 S. E. 447."

And then setting out letters practically similar in substance to the ones involved in this case, and citing from the case of *Robinson* v. *Weller,* 81 Ga. 704, said: "It is true that a contract can be made by correspondence through the mail, . . . as well as when the parties are together, and the same rules will apply in either case. But, in order to make any sort of contract, the offer of the seller must be accepted by the purchaser, unequivocally, unconditionally, and without variance of any sort. There must be a mutual consent of the parties thereto, and they must assent to the same thing in the same sense. An absolute acceptance of the proposal coupled with a condition, will not be a complete contract; because there does not exist the requisite mutual assent to the same thing, in the same sense. Both parties must assent to the same thing, in order to make a binding contract between them, applying these principles to the facts of this case, we find: (1) an advertisement in the newspaper by Mrs. Weller of a certain house and lot for sale; (2) a postal card addressed to Mrs. Weller, by the plaintiff inquiring as to her price and terms; (3) a letter from Mrs. Weller, the defendant, stating her price and terms; (4) a telegram from the plaintiff to the defendant, saying; 'offer accepted. Money ready; send deeds at once,' and a letter of the same date amplyfying the telegram and stating the same thing in substance."

After which judge ETHRIDGE said: "The court held in that case that her offer meant that she would accept cash at her place of residence in Chattanooga, and that she was not compelled to make the deeds and send them to Rome, Ga., nor go to Rome, Ga., for the cash payment, and held that the above did not constitute a binding contract."

The last cited case was cited to the Chancellor in the lower court and if we are not mistaken, his comment was that the case was either not in point, or not properly decided, or words to that effect; of course, we are not concerned

with that, nor do we think he should be. We recognize that this court alone has the right to interpret the law, and when thus interpreted, it should be followed, by the judges of the lower court. However, we have no fault to find with the trial judge. We are not at war with him.. His findings are at war with the decision above referred to, and since that decision fits this case exactly, and was fully presented by able brief to this court, and follows, if you please, all the authorities on that point, we shall not worry the court with further authorities on this proposition.

It being the undisputed law that an acceptance of an offer to sell for cash, must be followed by a tender of the cash to the person offering to sell, at his place of residence, and since the undisputed facts show in this case, that Mr. Nunnery did not tender to Mr. Fowler the cash at his place of residence, that ought to be the end of the matter. This court could not, under any circumstances, without over-ruling the case of *Philp* v. *Dana, supra,* do other than reverse and dismiss this cause, because until Fowler had had the cash tendered to him at Picayune, he had the right, which he did, to rescind his offer. For the court to order specific performance as it has done in this matter, is as we say to make another and different contract than the one to which Mr. Fowler and Mr. Nunnery agreed.

E. J. SIMMONS, for appellee.

Counsel contend that the minds of Fowler and Nunnery never met definitely in the mode of payment in the proposed trade, in that he. would take for his land one thousand five hundred dollars cash, which meant, in view of certain statements in *Philp* v. *Dana,* 121 Miss. 697, 83 So. 745, decided *in Banc,* cash at his residence, though Fowler had neglected in his offer of sale to so state, either directly or by any just inference from his words, and though unlike the case cited there was no diverse citizenship, the Fowlers being to all intents and purposes as much residents of Pike county where the lands were, and where they must fre-

33

quently go, as for Pearl River county, where Fowler was employed, and though unlike the case cited there was here no undisclosed agent, whose finahcial responsibility was unknown, and though unlike the case cited the case at bar, sought to put upon vendor no particular form of security and in which no provision was made for the cash payment and though unlike the case cited the case at bar involved more than an inquiry on the one hand and a reply on the other giving price per acre but making no offer to sell, and though unlike the case cited, the case here presents a contract which by internal reference and necessary connection accurately described and identified the subject-matter, still counsel insist that the case cited fits the facts here like a blanket.   They then proceed to argue that vendor had agreed to sell only for a certain amount in cash and though the offer was accepted no cash was tendered with the deed. In the first place counsel are not warranted in assuming that the simple word cash used in Fowler's proposal to sell, meant cash at such place as he might thereafter dictate for the plain reason, among others, that they are here adding the words not used by Fowler or Nunnery in the negotiations and out of all harmony with the plain understanding of the parties as disclosed by their subsequent conduct. That Fowler meant by his use of the word "cash" that there would be no deferred payment but that the entire consideration would be paid upon the consummation of the contract by a delivery of the deed, is too manifest for disputation and it is equally plain that such was the meaning given the word by Mr. Nunnery and that Fowler acquiesced in Nunnery's interpretation as being the most natural construction of his words and to accept counsel's reasoning; therefore would be to be interpolated by judicial construction into a perfectly plain and unambiguous contract, terms and stipulations neither inserted by the parties or consistent with their every act with reference thereto. Nunnery simply requested Mr. Fowler to make his draft for the amount and sign the deed and surely counsel are in error in assuming that this was not a payment in cash at Fowler's

place, according to the common acceptation of the term and the universal rule in modern business methods. Our court has never so held and at no point is this case controlled by *Philp* v. *Dana, supra,* the only trouble being that counsel seek by improper and unwarranted inferences to inform this court that the learned chancellor intimated that this case was not properly decided, the fact is the chancellor simply interpreted the *Philp-Dana* case in the light of its plain meaning and in the light of the doctrines announced in *Gannaway* v. *Toler,* 122 Miss. 111, also decided *in banc,* and which being the last utterance of our court on the subject demonstrates that counsel do not read the *Philp-Dana case* as this court does and as he must read it and that to accept counsel's understanding of the principles upon which the *Philp-Dana* decision rests, would mean, in the practical affairs of our modern life, the absolute elimination from our judicial system of the equitable remedy by specific performance, by compelling those who display too much fondness for duplicity to perform the very act and thing which they had undertaken to perform and this though the remedy has existed in our law since the middle of the sixteenth Century.

Again counsel fall into the error of assuming, in spite of the many cases in our books to the contrary, that the obligation created here were not mutual and dependent, in other words that Mr. Fowler was not bound by the agreement to do anything but that Nunnery was so bound that Fowler, perhaps, could hide in the woods at Poplarville and justify his breach of his contract with Nunnery by insisting that the word "cash" used in the correspondence meant "cash" at whatever place he happened to be concealed and could, in equity and good conscience, close his eyes to that part of Nunnery's letter of acceptance which said, "to which you will attach draft for one thousand five hundred dollars," and that he can now in view of his answer and vacillating conduct treat those words as stricken from the correspondence and look only to the part which then remains. I submit therefore that counsel's interpretation of

the *Philp-Dana* case is not justified by the facts of this case and is not consonant with reason.

SYKES, J., delivered the opinion of the court.

The appellee, A. D. Nunnery, by bill in chancery seeks the specific performance of a contract for the sale of certain lands to him by the appellant. From a decree granting this specific performance the appellant appeals.

The alleged contract is evidenced by letters between the parties. This correspondence is as follows:

"Magnolia, Miss., September 24, 1918.

"Mr. W. C. Fowler, Picayune, Miss.—Dear Sir: I am the man that D. Currie has been talking to you about buying the land you have at Chatawa.

"He informs me that you will take fifteen hundred dollars for all the land you own near Chatawa, Miss. Will you accept this price and furnish me abstract for same.

"Kindly let me hear from you at once, and oblige,

"Yours very truly,.      A. D. NUNNERY."

"Picayune, Miss., October 2, 1918.

"A. D. Nunnery, care Meyer & Neugrass, Magnolia, Mississippi.—Dear Sir: I have your letter of the 24th ult., which was received during my absence. · I will take fifteen hundred dollars cash for the land I own near Chatawa; this is net cash.

"I am inclosing abstract made by Price & Webb in May, 1902, which shows that I have undisputed possession for I have had it now over sixteen years. I could sell this out in parcels and realize double what I am asking you for it. In fact, I have some negroes after me now for some of the lands. When you read over the abstract and Price & Webb's letter of May 26, 1902, please return them to me. Of course I have sold some land since I bought this tract, as you will note, but nothing sold for several years.

"Very truly yours,

"W. C. Fowler, Picayune, Miss."

"Magnolia, Miss., Oct. 14, 1918.
"Mr. W. C. Fowler, Picayune, Miss.—Dear Sir: Replying to your letter of the 2d inst., I accept your property at Chatawa, and herewith inclose deed for same, to which you will attach draft for fifteen hundred dollars and send same to the Citizens' Savings Bank, Magnolia, Miss., for collection.

"Yours truly,        A. D. NUNNERY."

"Poplarville, Miss., Oct. 17, 1918.
"A. D. Nunnery, Magnolia, Miss.—Dear Sir: I have your letter of the 14th inst., with deed inclosed and which I am holding up until such time as I am able to get home to Picayune to examine papers in connection with what I have sold out of the original Rist purchase, as I do not think I have three hundred and fourteen acres left to sell. I sold some land to some of those colored people, and it strikes me that you have nearly all the original Rist purchase included in the deed. I am tied up here on account of short help and the influenza which is just now raging, and just as soon as I can I will let you hear from me.

"Very truly yours.        W. C. FOWLER."

"Poplarville, Miss., Oct. 28, 1918.
"A. D. Nunnery, Magnolia, Miss.—Dear Sir: Again referring to the Chatawa property, I find on looking up the acreage that the deed you have prepared calls for more acres than is now in the tract, and since consulting my wife, who is interested, she declines to sell for price of fifteen hundred dollars and I am therefore sorry to say that the deal is off on that basis.

"Very truly yours.        W. C. FOWLER."

"November 1, 1918.
"Mr. W. C. Fowler, Picayune, Miss.—Dear Sir: I am in receipt of your letter of the 28th ultimo, in which you are trying to back out of your sale of land to me near Chatawa, Miss. I am very much surprised, as you made me the proposition of fifteen hundred dollars cash and I accepted same, so will ask you to please make out deed and

send to Citizens' Savings Bank here, and I will take care of same.

"Yours very truly, A. D. NUNNERY.

"Poplarville, Miss., November 27, 1918.

"A. D. Nunnery, Magnolia, Miss.—Dear Sir: I duly received your letter of the 1st inst. and beg to reiterate my letter of October 28th. Mrs. Fowler, however, is agreeable to take two thousand dollars cash for what land she has to sell of the Chatawa property and if you are willing to do this the deal is on and will be held open for ten days from date hereof.

"Very truly yours,

"W. C. FOWLER, Attorney, Picayune.."

About nine months after the termination of the correspondence this suit was brought. The first letter of the appellees to the appellant was an inquiry as to whether or not the appellant would sell his lands near Chatawa for fifteen hundred dollars and furnish the appellee an abstract. To this letter the appellant stated that he would sell the land he owned near Chatawa for fifteen hundred dollars net cash and inclosed an abstract of the land showing that he had had possession of it for sixteen years, and requesting that the abstract be returned to him after it had been read by appellee. He stated in this letter that he had sold some lands originally contained in this tract, but nothing for several years. In reply to this letter on October 14, 1918, the appellee stated that he accepted the property and inclosed deed for the same. He further requested the appellant in this letter to attach draft for fifteen hundred dollars to this deed and send the same to a bank at Magnolia, Miss., for collection.

It will be noted that the offer of appellant to sell was for net cash. This letter is not an unqualified acceptance of that offer. In the previous correspondence nothing is said about whose duty it is to draft the deed. The appellee, however, assumed this duty and wrote a deed. When he

requested the appellant to sign it, he did not tender to him
in cash the consideration, but instructed him to draw on a
bank at Magnolia, Miss.   The appellant lived at Picayune;
consequently this letter was not an unqualified acceptance
of the offer of sale and was not accompanied by a tender in
cash of the consideration therefor. To this letter the appel-
lant replied that he would hold the papers until he could
examine into the contents of the deed, as he did not think
he owned three hundred and fourteen acres of land. Eleven
days later the appellant wrote appellee that on looking up
the acreage as contained in the deed that it contained more
land than he owned.    He then withdrew the offer to sell
the land owned by him for this amount.

There are several subsidiary questions presented by the
appellant in the record as to why the decree of the court
is erroneous, but it is only necessary for us to consider but
one of them, as that is decisive of the rights of the appellee.
The rule which governs in this case is thus admirably stat-
ed in the opinion of the court in the case of *Welch* v. *Wil-
liams*, 85 Miss. 301, 37 So. 561, as follows:

"The elementary general rule, as frequently enunciated
in reference to the enforcement of specific performance of
contracts, so far as relates to the particular branch of the
subject here presented for consideration, is that the con-
tract must be specific and distinct in its terms, plain and
definite in its meaning, and must show with certainty that
the minds of the parties had met and mutually agreed as to
all its details upon the offer made, upon the one hand, and
accepted, upon the other. If any of these requisites be lack-
ing, specific performance will not be decreed by a court of
equity."

In this case it is shown that the deed prepared by the
appellee and mailed by him to the appellant to be executed
by him contained more land than was owned by appellant.
The description in the deed was also erroneous in at least
two particulars, the appellee took upon himself the duty of
preparing this deed, and in it he failed to describe correct-
ly the lands owned by the appellant.   He also failed to

tender the fifteen hundred dollars in cash to the appellant at his home in Picayune. It may be that the appellee in attempting to correctly describe these lands was in some way misled by the abstract. The offer of the appellant was only to sell the lands owned by him. The abstract was merely to be used by the appellee as an aid in examining the lands and determining about what was owned by the appellant. By furnishing this abstract the appellant did not agree to convey the lands appearing from the abstract as belonging to him. He specifically called attention to the fact that he had sold some of these lands. He omitted, however, to state that some of the lands had been sold for taxes. The offer to sell was silent as to the nature and character of the deed the appellant would make to the lands; that is, whether a quit-claim, a special, or a general warranty deed. If the appellant had actually tendered the cash to the appellant and demanded of him a deed to whatever lands the appellant owned near Chatawa, he would have been entitled to a performance of the contract on the part of the appellant, but this he failed to do. He did not unconditionally accept the offer as made, but his so-called offer of acceptance was merely a counter proposition offering to take the land provided the appellant would execute the deed as prepared by the appellee and draw on the appellee for the money through a certain bank in Magnolia. Since the offer was not accepted according to its terms, the appellant was at liberty to withdraw it. This question has been recently discussed and the authorities cited in the case of *Philp* v. *Dana,* 121 Miss. 697, 83 So. 745.

The lower court erred in not dismissing the bill. The decree is reversed, and bill dismissed.

*Reversed and dismissed.*