# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02592-SCT

*CLARENCE VAUGHN, JR.*

*v.*

*JOHN C. RETTIG, JR.*

DATE OF JUDGMENT:            04/29/2003
TRIAL JUDGE:                HON. CARTER O. BISE
COURT FROM WHICH APPEALED:  HARRISON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:     DEAN HOLLEMAN
ATTORNEY FOR APPELLEE:      JAMES KENNETH WETZEL
NATURE OF THE CASE:         CIVIL - TORTS-OTHER THAN PERSONAL
                            INJURY & PROPERTY DAMAGE
DISPOSITION:                REVERSED AND REMANDED    - 03/10/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT**:

¶1.     Clarence Vaughn, Jr., filed a complaint for preliminary injunction, permanent injunction, accounting, appointment of receiver, damages and other relief against John C. Rettig, Jr., in the First Judicial District of the Chancery Court of Harrison County, Mississippi. Mark B. Strickland was substituted to act as Vaughn's attorney. After obtaining leave to amend, Vaughn filed an amended complaint against Rettig seeking to dissolve the incorporated business entity with the assets divided equally between the parties.

¶2.     Three letters were sent to Vaughn's attorney, Strickland, by Rettig's attorney, James K. Wetzel, dated May 29, 2002; June 25, 2002 and August 20, 2002. On October 29, 2002,

Rettig's attorney, Wetzel, filed a petition to enforce settlement against Vaughn. The trial court conducted a hearing on the petition to enforce settlement. Only Vaughn and Wetzel testified at the hearing. The trial court granted the petition to enforce settlement.

¶3.     Vaughn now appeals to this Court.

## FACTS

¶4.     In March 1999, Vaughn and Rettig formed and registered a company known as Campgrounds of the South, L.L.C. Each were to contribute $60,000 and to own 50% of the company. The purpose of the company was to own and operate a recreational park in Harrison County, Mississippi. A mortgage was incurred, land was purchased and the park began operation in 2000, with Rettig handling the daily operations.

¶5.     Vaughn sued Rettig in April 2001, seeking injunctive relief, an accounting, Rettig's removal and appointment of a receiver. Vaughn was initially represented by Don Rafferty, but Strickland was substituted to represent him. On April 10, 2002, Strickland filed a motion for trial setting and scheduling order and a motion for leave of court to amend pleadings. The trial court granted leave to amend the pleadings. Strickland filed Vaughn's amended complaint on May 31, 2002, seeking to dissolve the business.

¶6.     On May 29, 2002, Wetzel sent a letter to Strickland proposing that Vaughn purchase Rettig's interest in the business. In his letter, Wetzel wrote that Rettig had authorized him to submit the following proposal:

1.     [Rettig] would accept $250,000.00, cash money;
2.     The remaining 3 acres of undeveloped land in the SW corner of the property would be conveyed to John Rettig, free and clear of any and all liens;

2

3. All liability of debt, including the mortgage which is on the property and any credit card debts in the name of the Campgrounds, [Rettig] would be freed and held harmless from; and

4. John Rettig's name removed from all business contracts concerning Campgrounds of the South.

Strickland did not respond to this letter.

¶7. Thereafter, on June 25, 2002, Wetzel sent a letter to Strickland submitting another settlement proposal whereby Rettig would buy Vaughn's interest in the business for the sum of $125,000.00. The offer was to remain open for ten days. Strickland did not respond to this letter.

¶8. According to Wetzel, sometime prior to August 20, 2002, he spoke with Strickland by telephone about settlement. Thereafter, Wetzel sent a letter to Strickland dated August 20, 2002. The substance of that letter provided:

> Pursuant to our agreement to resolve this matter, this letter will confirm that my client has obtained the $125,000.00 to purchase the interest of Clarence Vaughn, Jr., for $125,000.00 in the Campgrounds of the South Development along with removing Mr. Vaughn from the underlying indebtedness. Please be advised that the funds will be available on Thursday, August 22, 2002, however, if you would like to draw up a mutual release releasing both parties from the obligation and an Order of Dismissal of the Chancery Court lawsuit, please feel free to do so. I can have the money hand carried to you on Friday, August 23, 2002 and I am sure that the bank will have to have some document signed by Mr. Vaughn releasing him for the underlying obligation as well. This letter will confirm settlement of this matter and I look forward to having the releases executed by the parties in order to resolve this matter.

Strickland did not respond to this letter.

¶9. Wetzel testified at the hearing to enforce settlement that he called Strickland two times: once on Friday, August 23, 2002, and another call the following week. According to Wetzel, Strickland explained: "Give me another week. I'm talking— he's [Vaughn] got some

3

reservations. He didn't say he was backing out. He said, give me another week, Jimmy." Wetzel also testified Strickland said "I'm having a little bit of a problem with my client. I'll get it resolved. Give me a week." Wetzel did not hear back from Strickland.

¶10. No writings from Vaughn or his attorney, Strickland, confirming a settlement were ever produced. All three letters regarding any settlement were authored by and offered by Wetzel. No releases were ever signed, and no money was ever exchanged.

¶11. Strickland did not testify at the hearing. Vaughn testified that he never agreed to settle the case against Rettig for $125,000.00. Vaughn further stated that he never had any discussions to settle the matter for $125,000.00. Wetzel and Vaughn were the only witnesses who testified at the hearing on Rettig's petition to enforce settlement.

¶12. The trial court determined that:

> The Court also recognizes that "the law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, mistake or over reaching."

> The Plaintiff, Clarence Vaughn, Jr., has failed to submit credible testimony that this settlement was reached without his expressed authority and has failed to show that the settlement was a result of any fraud, mistake or over reaching.

> It is quite obvious to this Court that a settlement was reached by virtue of the letter prepared by James K. Wetzel to Mark Strickland dated August 20, 2002, which was sent to Mark Strickland by facsimile as well as to his post office box.

¶13. The trial court denied Vaughn's motion for reconsideration. Vaughn now appeals to this Court raising the following issues:

> I. **Whether the trial court erred in admitting Wetzel's testimony to what Vaughn's attorney stated.**

> II. **Whether the trial court erred in finding that the case had been settled by Vaughn's attorney.**

4

**ANALYSIS**

### I. Hearsay

¶14. On appeal, Vaughn argues that Wetzel's testimony, over his counsel's objection, regarding what Strickland stated in their telephone conversations constituted hearsay. Vaughn contends that Strickland's hearsay statements should not have been admitted into evidence. M.R.E. 801(d)(2) provides:

> *Admission by Party-Opponent*. The statement is offered against a party and is (A) his own statement, in either his individual or a **representative capacity** or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning **a matter within the scope of his, agency or employment, made during the existence of the relationship**, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

(emphasis added). This assignment of error is without merit.

### II. Settlement

¶15. On appeal, Vaughn raises the issue of whether Strickland had authority to conduct settlement negotiations and settle his claims where Strickland was authorized only to conduct litigation. The trial court determined that Strickland had the authority to settle Vaughn's case and stated that Vaughn had not met his burden to prove that no settlement was reached. The trial court stated that Vaughn failed to submit credible evidence that the settlement was reached without his expressed authority and failed to show that the settlement was the result of any fraud, mistake or over reaching.

¶16. In *Terrain Enterprises, Inc. v. Western Casualty and Surety Co.,* 774 F.2d 1320, 1321 (5th Cir. 1985), the United States Court of Appeals for the Fifth Circuit was faced with

applying Mississippi law to determine whether there was an offer of settlement by David Mockbee, counsel for Terrain, and acceptance by counsel for Western. The United States District Court for the Southern District of Mississippi expressly recognized that a settlement offer was made by Terrain's attorney and accepted by Western's attorney. *Id.* However, the district court "found a genuine misunderstanding between Terrain and Terrain's attorney regarding the attorney's authority to settle the case." *Id.* The Fifth Circuit reversed and remanded the case, stating:

> It is presumed that an attorney who has represented a party is authorized to take all action necessary to conduct the litigation. *Great Atlantic and Pacific Tea Co. v. Majure,* 176 Miss. 356, 168 So. 468 (1936). The burden of showing that the attorney had no authority to act is upon the party denying such authority. *Hirsch Bros. & Co. v. R.E. Kennington Co.,* 155 Miss. 242, 124 So. 344 (1929). Terrain did not meet this burden because they did not offer any proof that Mockbee did not have authority to act on their behalf. Western was justified in relying upon the settlement offer made by Mockbee based upon his previous actions as representative of Terrain. There is no question here of good faith. Thus, the three requirements of apparent authority were satisfied in this instance.

774 F.2d at 1322.

¶17. In *Terrain,* Western made a motion to enforce settlement. *Id.* at 1321. Terrain contended that its counsel, Mockbee, did not have actual or apparent authority to settle the case. *Id.* at 1322. However, the court noted that "Western countered that contention with Mockbee's testimony that he was 'directed' to settle the case." *Id.*

¶18. Here, Strickland never was called to testify at the hearing on Rettig's petition to enforce settlement. Likewise, we have no written documents from Strickland supporting that there was a settlement. When Rettig attempted to enforce the contended settlement, Vaughn testified that he never authorized a settlement and conducted no settlement negotiations with his

6

attorney, Strickland.   No releases were ever prepared or signed, and no money had been exchanged.

¶19.   In *Great Atlantic & Pacific Tea Co. v. Majure,* 176 Miss. 356, 168 So. 468, 472 (1936), this Court discussed its holding in *Hirsch Bros. & Co. v. R. E. Kennington Co.,* 155 Miss. 242, 124 So. 344 (1929), which was also applied by the Fifth Circuit in *Terrain.*   In *Great Atlantic,* this Court stated:

> But, in the recent case of *Hirsch Bros. & Co. v. R.E. Kennington Co.,* 155 Miss. 242, 124 So. 344, 88 A.L.R. 1, we held that an attorney could not bind a party unless he had been employed by such party, and overruled the earlier decisions holding that a party was bound by every act of the attorney he had employed.
>
> It seems to be the sound principle that where a party employs an attorney, and such attorney acts for him in the court proceedings, such acts being presumptively authorized, and a third party is injured by such act of the attorney, and where the party for whom the attorney acts does not take reasonable steps to overcome, or undo, the wrongful consequences of the act of the attorney, such party is estopped from setting up any want of power in the attorney to act for him.

*Great Atlantic & Pacific Tea Co.,* 168 So. at 472.

¶20.   However, rather than whether Strickland had authority to settle Vaughn's claims, the issue before this Court is whether the parties reached a settlement by establishing that a meeting of the minds occurred.   Vaughn contends that the trial court should have denied Rettig's petition to enforce settlement because there was no proof that there was a meeting of the minds to settle the case.

¶21.   In *Viverette v. State Hwy. Comm'n of Miss.,* 656 So. 2d 102, 103 (Miss. 1995), this Court held:

> It is elementary that in order for there to be a settlement there must be a meeting of the minds. *Thomas v. Bailey,* 375 So.2d 1049, 1052 (Miss. 1979)

7

(citing ***Hutton v. Hutton,*** 239 Miss. 217, 230, 119 So.2d 369, 374 (Miss. 1990) (a settlement is a contract). **The burden is upon the party claiming the benefit of the settlement to demonstrate by a preponderance of the evidence that there was a meeting of the minds.** ***Warwick v. Matheney,*** 603 So.2d 330, 336 (Miss. 1992).

(emphasis added).

¶22. The trial court correctly cited ***Viverette,*** finding that there must be a meeting of the minds in order for there to be a settlement. However, as argued on appeal by Vaughn, the trial court then stated that "the plaintiff, Clarence Vaughn, Jr., has failed to submit credible testimony" and relied upon the unilateral letter dated August 20, 2002, written by Rettig's attorney, Wetzel. Vaughn contends that the trial court erred in placing the burden upon him rather than Rettig to prove that there had been no settlement.

¶23. In ***Viverette,*** this Court held that the burden of proving that a meeting of the minds occurred rests upon the party who is claiming benefit from the settlement. The Court further found that the party claiming benefit from the settlement must "demonstrate by a preponderance of the evidence that there was a meeting of the minds." ***Id.***

¶24. As previously discussed, Rettig's attorney, Wetzel, testified as to the telephone conversations he had with Strickland. Wetzel's unilateral letter dated August 20, 2002, was introduced. No written documents, letters or confirmation were produced from Vaughn's attorney, Strickland. Vaughn testified that he never authorized any settlement nor engaged in any settlement negotiations or discussions to settle his case for $125,000.00. Strickland was never called as a witness. No releases were prepared by Strickland or signed by Strickland or Vaughn. No money was ever transferred to Vaughn. All we have in the record is what Wetzel

8

testified that Strickland said in the telephone conversations and an unilateral letter from Wetzel to Strickland with no response from Strickland.

¶25.   For some reason, neither Strickland nor Rettig were ever called as witnesses. Nothing in the record reflects that they were unavailable.   The burden rested on Rettig to prove that a meeting of the minds occurred in order to enforce settlement.   We find based on Vaughn's denial of any knowledge of the settlement, no written documentation or letters from Vaughn's attorney to Rettig's attorney discussing settlement or confirming settlement and the fact that Strickland was not called to testify, we are left with many unanswered questions.   As we are bound by the record and the lack of evidence to demonstrate settlement, we conclude that the trial court erred in granting Rettig's petition to enforce settlement.


## CONCLUSION

¶26.   For the foregoing reasons, we reverse the judgment of the Chancery Court for the District of Harrison County, Mississippi, and remand this case for further proceedings consistent with this opinion.

¶27.   **REVERSED AND REMANDED.**

     **SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCURS. DIAZ AND GRAVES, JJ., NOT PARTICIPATING**.